Julius E. HAMMIE

v.

**SOCIAL SECURITY ADMINISTRATION.**

**Civ. A. No. 90–6955.**

United States District Court,
E.D. Pennsylvania.

June 5, 1991.

Julius Hammie, pro se.

Virginia Gibson-Mason, Asst. U.S. Atty., U.S. Attorney's Office, Philadelphia, Pa., for Social Security Admin.

## MEMORANDUM AND ORDER

GAWTHROP, District Judge.

Plaintiff, Julius E. Hammie, who is currently incarcerated at the Philadelphia Industrial Correctional Institute, filed this *pro se* action under the Freedom of Information Act, 5 U.S.C. § 552, seeking an order from this court requiring the defendant, Social Security Administration, ("SSA"), to release certain of plaintiff's medical records. Now before the court are plaintiff's motion to compel the SSA to prepare a *Vaughn* index, and defendant's motion to dismiss, for plaintiff's alleged failure to exhaust administrative remedies. For the following reasons, I shall grant the motion for a *Vaughn* index and deny the motion to dismiss.

## BACKGROUND

Plaintiff alleges that he sent two letters—dated April 18, 1990 and August 8, 1990—to the Philadelphia office of the SSA, each requesting, under the Freedom of Information Act, documents in the agency's possession regarding plaintiff's "medical and psychological profile", and asking in particular for "evaluations taken by psychiatrists and psychologists regarding issues on 'post traumatic stress disorder' and addictive and emotional personality disorder." *See* Complaint, Exhibits 1–3. Plaintiff avers that he was informed by his social worker, who was allegedly called by an officer of the SSA, that these requests were denied. *See* Complaint, Exhibit 4. Plaintiff further avers that he sent a third letter—dated September 3, 1990—to the same office, appealing this denial. *Id.*

Receiving no response, plaintiff filed this action in October, 1991. On November 16, 1990, I granted plaintiff's motion to proceed *in forma pauperis*. The Clerk of the Court effected service upon defendant on February 11, 1991.

Defendant now denies having received plaintiff's requests or having any knowledge of plaintiff's requests before the complaint was served. *See* Defendant's Motion to Dismiss, Exhibit "A" (Declaration of Valerie Loughran, Assistant Regional Commissioner, Program Operations and Systems); Exhibit "B" (Declaration of Ronald Weber, Manager of Philadelphia District Office). Defendant further contends that this action is premature, as plaintiff has failed to designate a representative to receive his released medical files, as required by SSA regulations. Ronald Weber, Philadelphia District Manager of SSA, declares that he sent a letter to plaintiff in April, 1991, explaining that plaintiff must name a representative before his request can be considered. *See id.*, Exhibit "B".[1]

## DISCUSSION

### I. *Jurisdiction*

Preliminarily, I note that this court has jurisdiction to hear plaintiff's claim under both the Freedom of Information Act, ("FOIA"), 5 U.S.C. § 552, and the Privacy Act, 5 U.S.C. § 552a. The former allows persons to request any public records subject to disclosure, *see* 5 U.S.C. § 552(a)(3); the latter allows persons to request records pertaining specifically to them, *see* 5 U.S.C. § 552a(d)(1). Both allow persons to bring suit in federal district court to challenge an agency refusal to disclose. *See* 5 U.S.C. § 552(a)(4)(B); 5 U.S.C. § 552a(g)(1)(B).

### II. *Motion to Dismiss*

 Defendant contends that the court may not hear plaintiff's claim in this case because plaintiff has not properly perfected his right to sue. Neither FOIA nor the Privacy Act specifically requires an individual to exhaust administrative remedies before bringing suit. However, that a requirement has been imposed by the courts as a general principle of administrative law. *See Hedley v. United States*, 594 F.2d 1043, 1044 (5th Cir.1979) (FOIA); *Germane v. Heckler*, 804 F.2d 366, 369 (D.C. Cir.1984) (Privacy Act). The purpose of the requirement is to allow the agency the opportunity to exercise its expertise and develop a record for review. *In re Steele*, 799 F.2d 461, 466 (9th Cir.1986). Thus, when a person asks a court to compel an agency to produce documents before that person has made a formal request to the agency for those documents, the court will decline to act. *See Germane*, 804 F.2d at 368; *Steele*, 799 F.2d at 466.

On the other hand, if a person makes a proper request, an agency's inaction will not prohibit court review. FOIA requires agencies to respond to requests for documents within ten days, and to respond to appeals within twenty. *See* 5 U.S.C. § 552(a)(6)(A). If the agency fails to comply with these time limits, the person making the request "shall be deemed to have exhausted his administrative remedies". *See* 5 U.S.C. § 552(a)(6)(C).

 Here, plaintiff has made a formal request. Indeed, plaintiff contends that he

---

**1.** Weber declares that he sent the letter twice, once on April 5, 1991 and again on April 15, 1991. The second time he sent it to what defendant learned to be plaintiff's new address.

made two requests and attempted an appeal, all without response from defendant. In considering the motion to dismiss, I am required to accept these pleadings as true. *Silver v. Mendel,* 894 F.2d 598, 599 (3rd Cir.1990). Thus, the issue here is not whether plaintiff actually made his requests, but whether the requests made were sufficient, under agency regulations governing the making of requests, to satisfy plaintiff's obligation to seek relief first from the agency.

Social Security regulations provide that a person requesting access to his or her medical records under FOIA or the Privacy Act must designate a representative—who can be a "physician, other health professional, or other responsible individual"—to receive those records. *See* 20 C.F.R. § 401.410(a); 45 C.F.R. § 5b.6(b)(1)(ii). The purpose of the rule is apparently to shield individuals from information that might cause them harm. When the SSA determines that access to medical records "is not likely to have an adverse effect" on the person seeking access, direct access will be granted. *See* 45 C.F.R. § 5b.6(b)(2). However, if the SSA determines to the contrary, that access will have an adverse effect on the requesting individual, or if the SSA determines that it is not qualified to make such a determination, the records are released to the representative, *id.,* who then has discretionary authority to determine what information in the records will be released to the subject individual. *See* 20 C.F.R. § 401.410(a); 45 C.F.R. § 5b.6(b)(1)(ii).

The regulations further state that if a person requesting his or her medical records fails to name a representative, the SSA "may decline to release the requested information", *see* 20 C.F.R. § 401.410(a), and that if the SSA so declines, the refusal to produce is "not a formal denial of access" and may not be appealed within the agency. *See* 20 C.F.R. § 510.

That plaintiff, Hammie, has not named a representative is undisputed. The SSA suggests, therefore, that plaintiff has not exhausted his administrative remedies and that the denial of access may not be reviewed by the court.

I disagree. Plaintiff sought, and continues to seek, direct access to his medical records. Social Security regulations provide for direct access when the SSA determines that such access will not adversely affect the claimant. *See* 45 C.F.R. § 5b.6(b)(2). Whether or not plaintiff has perfected his right to indirect access, by naming a "representative" to receive and review the records for him, would not appear to be relevant to whether plaintiff has a right to direct access.

It could be argued that the naming of a representative is a procedural requirement in all cases, including those where direct access is sought. While the regulations state that it "may be possible" to release medical records directly in certain cases, *see* 20 C.F.R. § 401.410(a), they also state that a representative "must" be named in all cases. *Id.* This suggests that defendant need not consider plaintiff's request for direct access until a representative is named.

Such a reading, however, would effectively negate plaintiff's request. Plaintiff states that he has not named a representative because he wants to review his records himself and because he does not want his files disclosed to another person. *See* Plaintiff's response to Defendant's Motion to Dismiss[2] at 6. Yet once a representative is named, the SSA may send a person's file to the representative, without first giving the person the opportunity to appeal his or her right to receive the file directly. The applicable regulation makes it clear that a person will be informed that direct access is denied only after the record is sent to the representative. *See* 45 C.F.R. § 5b.6(b)(2).[3] Thus, a determination by the court that plaintiff must name a representative before his suit for direct access will

---

2. Captioned "Plaintiff's Motion In Opposition to Defendant's Motion to Dismiss Complaint and Vaughn Index", filed May 2, 1991.

3. The regulation states specifically that a claimant will be "informed in writing that the record has been sent". *See* 45 C.F.R. § 5b.6(b)(2).

be considered would be a *de facto* ruling on the merits against him.

Of course, such a ruling would be appropriate if plaintiff, as a matter of law, has no right to direct access. Yet at this time I am unable so to hold. First, although the regulations give the SSA discretion to deny direct access, any given denial might be challenged as an abuse of discretion.

 Second, the regulations themselves might be challenged as inconsistent with the Privacy Act.[4] The Privacy Act gives individuals the right to personally review records kept on them. *See* 5 U.S.C. § 552a(d)(1). While the Act expressly allows agencies to exempt certain records kept in the process of criminal enforcement and investigation, *see* 5 U.S.C. §§ 552a(j) & 552a(k), the Act does not similarly extend to agencies authority to exempt medical records.

The Act does give agencies the authority to establish "special procedures, if deemed necessary, for the disclosure to an individual of medical records, including psychological records." *See* 5 U.S.C. § 552a(f)(3). The procedures promulgated by the SSA for restricting direct access may be seen to be authorized under this section. At the same time, it is clear that indirect access may mean no access. Representatives are apparently under no duty to disclose any information contained in a persons reports. *See* 20 C.F.R. § 401.410(a), 45 C.F.R. § 5b.6(b)(1)(ii) (representative has "discretion" to inform subject individual of record's contents). Further, the decisions of representatives are apparently insulated from judicial review. Under FOIA and the Privacy Act, judicial review extends only to the actions of agencies. *See* 5 U.S.C. § 552(a)(4)(B); 5 U.S.C. § 552(g)(1); *see also Benavides v. Bureau of Prisons*, No. 90–1293, Slip Op. (D.D.C. March 22, 1991)

(available at 1991 U.S.Dist. LEXIS 3838) (agency discharges obligation under Privacy Act by releasing records to representative, even though representative does not share all information with subject individual). That the SSA regulations allow for denial without review may be seen to be contrary to the intent of Congress.

As these issues were not raised by the parties, I do not decide them here. I hold only that plaintiff has requested direct access, has been effectively denied such access, and thus may challenge that denial in this forum.

### III. *Vaughn Index*

 In the seminal case of *Vaughn v. Rosen*, 484 F.2d 820 (D.C.Cir.1973), the District of Columbia Circuit ruled that agencies cannot rely on general or conclusory allegations of exemptions in denying a FOIA request, but must provide a "relatively detailed analysis in manageable segments". *Id.* at 826. *Vaughn* has been widely followed and read to require agencies to "itemize and index" requested documents, segregating the disclosable from non-disclosable portions, and correlating each non-disclosable portion with the FOIA provision that allegedly allows nondisclosure. *See Lame v. United States*, 654 F.2d 917, 921 (3rd Cir.1981); *Brown v. FBI*, 658 F.2d 71, 74 (2d Cir.1981). The purpose of a so-called *Vaughn* index is to assist a trial court in its *de novo* review of an agency decision to withhold. *See Brown*, 658 F.2d at 74; *Vaughn*, 484 F.2d at 826.

Plaintiff has requested a *Vaughn* index here to "sharpen the issues" and "test the bases for the government's exemption claims". *See* Plaintiff's Motion for Vaughn Index, supporting memorandum at 2. Defendant counters that the request for a *Vaughn* index is premature, because the SSA has not formally refused to disclose

---

4. While asserting right to direct access, plaintiff does not set out specific legal grounds for such access. This does not mean, however, that the court should not consider whether colorable grounds exist. Under the federal rules, plaintiffs are required to plead facts, not legal theories. *See Evans Products Co. v. West American Insurance Co.*, 736 F.2d 920, 923 (3rd Cir.1984) (court may grant relief where entitled on theory

not pleaded). Further, when addressing a motion to dismiss, the court is to construe the complaint liberally in plaintiff's favor. *Silver v. Mendel*, 894 F.2d 598, 599 (3rd Cir.1990). This is especially true with regard to complaints by pro se plaintiffs. *See Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972).

1228

the requested material, but has only declined to act until plaintiff designates a representative.

Nevertheless, as stated above, the SSA's decision is an effective denial of direct access. Although the denial is not based on a specific FOIA exemption, *see* 5 U.S.C. § 552(b) (listing exemptions), it is similar in effect. Further, the preparation of a *Vaughn* index would aid the court in reviewing this decision. There is no evidence in the record as to whether the SSA refuses to provide direct access to all records within plaintiff's request or only to some of the records. Nor is there any evidence as to whether the SSA has determined that direct access would harm the plaintiff, or has instead determined that it is unable to assess the potential harm to plaintiff. Thus, I shall order that such evidence be produced and that the case proceed.